IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**JHONNY MARCELINO NUNEZ GARCIA,**
                    **Plaintiff,**


**v.**                                                    **CIVIL ACTION NO.: 3:16-CV-161
                                                          (GROH)**


**DIANE McLEAN, MD, Metropolitan Correctional
Center, NY, NY; MICHAEL BORECKY, MD,
Metropolitan Detention Center, Brooklyn, NY;
BRIAN BUSCHMAN, DR, USP Allenwood;
BRIAN GERSON, MS/NP-C, USP Allenwood;
JODY BENNETT-MEEHAN, PA-C, USP
Allenwood; B. WOOD, PA-C, USP Allenwood;
ELIZABETE SANTOS, Clinical Director, USP
Allenwood; AMY ARMEL, PA-C, USP Hazelton;
LEIGH BIRD, PA-C, USP Hazelton; ROBERT
BEAUDOUIN, MD Clinical Director,
Metropolitan Correctional Center, NY, NY; A.
ABOULFATCH, A MLP, Metropolitan
Correctional Center, NY, NY; Y. JOAQUIN,
MLP, Metropolitan Correctional Center, NY,
NY; VICTOR GONZALES, MD, Metropolitan
Correctional Center, Brooklyn, NY; JENNIFER
HOLTZAPPLE, PA, USP Allenwood; TERRY
O'BRIEN, Complex Warden,  USP Hazelton;
THOMAS O. DUVALL, PHD, LMHC, NCC
Psychologist, USP Hazelton; B. FRIEND, RN
Health Service Administrator, USP Hazelton; N.
Razavi, MD, USP Hazelton; CHRISTOPHER
MEYER, MPAS, PA-C, USP Hazelton; JOHN
PYLES, FNP-BC, USP Hazelton; and CHARLES
CRAIG, PA ALP, USP Allenwood.**
                    **Defendants.**


<u>**REPORT AND RECOMMENDATION**</u>

# I.  Introduction

On November 28, 2016, the *pro se* Plaintiff, who was then a federal prisoner incarcerated at USP McCreary in Pine Knot, Kentucky, initiated this case by filing an action pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), against 21 individuals, only some of whom were federal employees or agents, claiming a due process violation, and a violation of his Eighth and Fourteenth Amendment rights.  ECF No. 1.[1]

This matter is pending before this Court for an initial review and Report and Recommendation pursuant to Local Rule of Prisoner Litigation Procedure ("LR PL P") 2 and 28 U.S.C. § 1915A.

# II.  FACTUAL AND PROCEDURAL HISTORY

## A. Underlying Criminal Conviction in the Southern District of New York case number 1:02-CR-994.

On April 28, 2010, Plaintiff was indicted in the Southern District of New York. ECF No. 1[2].  A superseding indictment[3] was filed on September 29, 2010.  ECF No. 32. Another superseding indictment was filed on December 21, 2011.  ECF No. 78.   On January 24, 2012, a jury returned a verdict of guilty as to Counts 1 and 2 of the second superseding indictment.   On January 10, 2013, the Court sentenced Plaintiff to ten

---

[1]  All ECF references herein are for the instant case, 3:16-CV-161, unless otherwise noted.

[2]  In this section, II.A., all ECF references are for case number 1:10-CR-367 from the Southern District of New York.

[3]  Although the charging documents are unavailable for review on PACER, in its January 11, 2013 judgment in a criminal case which is available for review, the United States District Court listed the charges in Count 1 as "Conspiracy to distribute and possess with intent to distribute crack", and in Count 2 as Discharge of a firearm in furtherance of a drug crime.  ECF No. 133 at 1.  The Court of Appeals for the Second Circuit in its opinion issued October 29, 2014, further described the charges as "(1) conspiracy to distribute and possess with intent to distribute at least 280 grams of cocaine base (in the form of crack) in violation of 21 U.S.C. §§ 846, 841(b)(1)(A)(Count One) and (2) knowingly using and carrying firearms in furtherance of the conspiracy charged in Count One, in violation of 18 U.S.C. § 924(c)(1)(A)(iii)(Count Two)."  ECF No. 175 at  1 – 2.

years of imprisonment for each count, with those terms to be served consecutively to one another but concurrently with the term of imprisonment imposed on July 29, 2010 in New York County Supreme Court Case 00148N-2010, followed by five years of supervised release ECF No. 133 at 3, 4.  Plaintiff appealed his conviction to the Court of Appeals for the Second Circuit, which on October 29, 2014, affirmed the judgment of the District Court but remanded for resentencing on Count Two.  ECF No. 175 at 3 – 4.

On April 30, 2015, the District Court entered an Amended Judgment which sentenced Plaintiff to "a total term of imprisonment of 217 months, which represents a sentence of 240 months minus the 23 months the defendant served in state primary custody prior to the imposition of federal sentence. . ."  ECF No. 193 at 2.

On May 10, 2016, Plaintiff filed a motion to vacate under 28 U.S.C. § 2255, which was assigned the civil case number 1:16-CV-3512.  ECF No. 208.  On November 8, 2017, the Court held a hearing and amended the judgment in petitioner's underlying case which rendered his habeas petition in 1:16-CV-3512 moot.  The Court entered an order to that effect on November 9, 2017.  ECF No. 254.

The November 9, 2017, Amended Judgment re-sentenced Plaintiff to "one hundred and twenty (120) months on count one to be followed by ninety-seven (97) months on count two for a total term of imprisonment of two hundred and seventeen (217) months."  ECF No. 253 at 2.   Thereafter, Plaintiff filed a notice of appeal on November 13, 2017.  ECF No. 255.  That appeal is currently pending before the United States Court of Appeals for the Second Circuit in that court's case number 17-3715.

Throughout the pendency of these proceedings, Plaintiff has been housed in various federal institutions, including: (1) the Metropolitan Detention Center in Brooklyn,

New York ("MDC Brooklyn"); (2) Metropolitan Correctional Center in New York, New York ("MCC New York"); (3) Federal Correctional Complex Allenwood in White Deer, Pennsylvania ("FCC Allenwood"); and (4) Federal Correctional Complex Hazelton in Bruceton Mills, West Virginia ("FCC Hazelton").

**B.     The Instant Complaint in 3:16-CV-161.**

In his complaint filed November 28, 2016, Plaintiff named 21 people as defendants.  ECF No. 1.  Five of those individuals, Diane McLean ("McLean"), Michael Borecky ("Borecky"), Brian Buschman ("Buschman"), Victor Gonzales ("Gonzales") and N. Razavi ("Razavi"), were identified as "MD" or "DR".  ECF No. 1 at 2, 7, 8.  The other sixteen defendants named were identified by job descriptions.   All of the named defendants were associated with one of four institutions where Plaintiff was incarcerated, MDC Brooklyn, MCC New York, FCC Allenwood or FCC Hazelton.  ECF No. 1.

The essence of Plaintiff's claims is that while incarcerated in these facilities he was prescribed various antipsychotic medications to treat his bipolar disorder which caused him to develop gynecomastia, a condition where males grow excess breast tissue, which has caused him "extreme mental anguish, embarrassment, shame and depression."  ECF No. 1 at 14.  Plaintiff makes 29 claims in his complaint:

1. Claim 1 alleges that the defendants have deprived him of his Eighth and Fourteenth Amendment rights by acting with deliberate indifference to his serious medical needs, which constitutes cruel and unusual punishment.  Id. 1 at 12.

2. Claim 2 alleges that in 2010, McLean prescribed him various antipsychotic medications including risperidone and olanzapine.  Id. at 13.

3. Claim 3 alleges that on May 5, 2015, Borecky was aware that Plaintiff was treated with antipsychotic medications risperidone and olanzapine in 2013, but was in remission in 2015.  Id. at 13.

4. Claim 4 alleges that in 2015, an unnamed endocrinologist recommended cessation of all antipsychotics prescribed to Plaintiff and the possibility of breast reduction surgery for him.  Id. at 13.

5. Claim 5 alleges that on July 17, 2015, Buschman decided not to prescribe risperidone to Plaintiff because the medication could exacerbate Plaintiff's gynecomastia.  Id. at 14.

6. Claim 6 alleges that on July 17, 2015, Buschman "attempted to" prescribe the antipsychotic risperidone to Plaintiff after an unnamed endocrinologist recommended cessation of antipsychotics. Id. at 15

7. Claim 7 alleges that on July 22, 2015, Jody Bennett-Meehan PA-C (Bennett-Meehan") advised Buschman that Plaintiff was hearing voices.  Id.

8. Claim 8 alleges that on July 20, 2015, Clinical Direction Elizabeth Santos ("Santos") prescribed ziprasidone, which has the same side effects of risperidone.  Id.

9. Claim 9 alleges that in 2016, Plaintiff was taken to Preston Memorial Hospital for an ultrasound and mammogram, which found Plaintiff had "dense retroareolar fibroglandular tissue."  Id.

10. Claim 10 alleges that on December 3, 2015, Amy Armel, PA-C ("Armel") reviewed Plaintiff's medical records and noted that Plaintiff did not want to take any antipsychotics because of his gynecomastia.  Id.

11. Claim 11 alleges that on July 20, 2015, Bennett-Meehan "tried to cover for" Buschman by incorrectly noting in Plaintiff's medical records that Plaintiff did not recall stating he wanted to discontinue risperidone because of his gynecomastia.  Id. at 16.

12. Claim 12 alleges that on July 17, 2015, Buschman discontinued antipsychotic medication after Plaintiff advised the medication caused his gynecomastia. Id.

13. Claim 13 alleges that on June 15, 2015, B. Wood ("Wood") noted Plaintiff was found in 2014 to have benign breast tissue.  Id.

14. Claim 14 alleges that on July 28, 2014, Plaintiff was found to have moderate to advanced gynecomastia.  Id.

15. Claims 15 through 28 alleges that on unnamed dates, Plaintiff advised various defendants about his gynecomastia, prescribed medications and surgery, including: MCC Clinical Director Robert Beaudouin ("Beaudouin") (Claim 15); A. Aboulfatch, MLP ("Aboulfatch") (Claim 16); Y. Joaquin, ("Joaquin") (Claim 17); Brian Gerson, MS/NP-C ("Gerson") (Claim 18); Gonzales (Claim 19); Jennifer Holtzapple, PA ("Holtzapple") (Claim 20); Terry O'Brien, Complex Warden ("O'Brien") (Claim 21); Charles Craig, PA ("Craig") (Claim 22); B. Friend, RN ("Friend") (Claim 23); Thomas Duvall, PhD, LMHC, NCC Psychologist ("Duvall") (Claim 24); Razavi (Claim 25); Christopher

Meyer ("Meyer") (Claim 26); John Pyles, FNP-BC ("Pyles") (Claim 27); and Leigh Bird, PA-C ("Bird") (Claim 28).

16. Claim 29 alleges that Buschman noted[4] that an unnamed endocrinologist advised that olanzapine and risperidone are idiopathic.  Id. at 18.

ECF No. 1 at 12 – 18.  In support of his claims, Plaintiff references various exhibits. Claims 3 through 14 reference Exhibits A, B, C, D, E, F, G, H, I, J, K and N.  Claims 28 and 29 reference Exhibits L and M.  However, no such exhibits are attached to the Complaint.  The actual attachments to the complaint are identified as: "Attachment.1A" [ECF No. 1-1]; "Attachment.2A" [ECF No. 1-2]; "Attachment.3A" [ECF No. 1-3]; "Attachment.4A" [ECF No. 1-4]; "Attachment.5A" [ECF No. 1-5]; and "Attachment.6A" [ECF No. 1-6].  Plaintiff seeks ten million dollars in compensatory and fifteen million dollars in punitive damages, as well as costs and fees.  ECF No. 1 at 14.

Plaintiff paid an initial partial filing fee of $20.00 on March 23, 2017.  ECF No. 11. On July 12, 2017, the Court entered an order directing Defendants to file an answer, motion or other responsive pleading.  ECF No. 14.  Defendants were twice granted an extension of time to file an answer by orders entered on September 12, 2017 and October 25, 2017.  ECF Nos. 30, 63.

On October 13, 2017, Razavi filed a motion to dismiss for failure to state a claim, and a memorandum of law in support thereof.  ECF Nos. 52, 53.  On October 20, 2017, Defendants Buschman, Gerson, Bennett-Meehan, Wood, Santos, Armel, Bird, Beaudouin, Joaquin, Holtzapple, O'Brien, Duvall, Friend, Meyer, Pyles, and Craig ("the

---

[4]  Claim 29 does not clearly specify a date when the allegations occurred.  The only apparent date listed is "12-09-1014".  ECF No. 1 at 18.  If that notation is intended to specify a date upon which the allegations occurred, it clearly contains at least one typographical error, as the apparent year listed is more than 1,000 years ago.

Federal Defendants") filed a motion to dismiss, or in the alternative for summary judgment, with an accompanying memorandum and five attachments thereto. ECF Nos. 56, 56-1, 56-2, 56-3, 56-4, 56-5, 56-6. A corrected declaration for Defendant Buschman ("Buschman") was filed on November 2, 2017. ECF No. 65. McLean, Santos, Borecky, Aboulfatch and Gonzales were never served by Plaintiff. A sealed summons for each of those five named defendants was returned as "unexecuted" on July 19, 2017. ECF Nos. 20, 21, 22, 23, 24.

A Roseboro notice issued on October 24, 2017. ECF No. 59. On November 13, 2017, Plaintiff filed a motion to stay on the ground that an evidentiary hearing was to be held in a case filed pursuant to 28 U.S.C. § 2255 in the Southern District of New York in case numbers 10-CR-367 and 16-CV-3512, and that until the evidentiary hearing was completed, Plaintiff would "not be able to adequately litigate his pending civil case[ ]." ECF No. 70. On November 27, 2017, Razavi filed a response to Plaintiff's motion to stay. ECF No. 72. On December 7, 2017, the Court denied Plaintiff's motion as moot because at the time Plaintiff's motion to stay was received and filed by the Clerk, the hearing which served as a basis for the motion to stay had already concluded. ECF No. 74.

### III. Standard of Review

#### A.    Pro Se Litigants

Because Petitioner is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious. Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the

8

Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.

Courts must read *pro se* allegations in a liberal fashion.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  However, a complaint is frivolous if it is without arguable merit either in law or in fact.  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute).  The Supreme Court in Neitzke recognized that:

> Section 1915(d)[5] is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. Examples of the former class are claims against which it is clear that the defendants are immune from suit. . .

490 U.S. at 327.

While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys,  even under this less stringent standard, a *pro se* complaint is still subject to dismissal. Haines, supra, at 520–21. "[T]he mandated liberal construction afforded to pro se pleadings 'means that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so.'"  Barnett v.

---

[5]   The version of 28 U.S.C. § 1915(d) which was effective when Neitzke was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious."  As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

Hargett, 174 F.3d 1128, 1133 (10th Cir.1999).  However, "judges are [ ] not required to construct a party's legal arguments for him."  Small v. Endicott, 998 F.2d 411, 417 - 8 (7th Cir.1993).

   **B.   Motions to Dismiss**

   Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted.  The Federal Rules of Civil Procedure require only, "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited, "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley, 355 U.S. at 45-46.

   Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 - 1 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007).  Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face."  Id. at 555, 570.   In Twombly, the Supreme Court found that, "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."  Id. at 570.  *Thus, to* survive a motion to dismiss, a

plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

 "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation.  Id. at 678.  "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 679. Thus, a well-pleaded complaint  must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim.  Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly,  it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses."  Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff.  Mylan Labs, Inc. v. Matkari, 7 F.3d1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

### C.    Motions for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a), the Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In applying the standard for

summary judgment, the Court must review all the evidence in the light most favorable to the nonmoving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion to, "demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348 (1986).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a verdict."  Anderson, supra, at 256. Thus, the nonmoving party must present specific facts showing the existence of a genuine issue for trial, meaning that "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial."  Id.  The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248.

To withstand such a motion, the nonmoving party must offer evidence from which

a "fair-minded jury could return a verdict for the [party]." Id.   "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987).   Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation.   Anderson, supra, at 248.

Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, supra, at 587. "Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. citing First Ntl. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 155, 1592 (1968).   See Miller v. Fed. Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990).   Although any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, where, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Matsushita, supra, at 587-88. Anderson, supra, at 248-49.

## IV. Analysis

Plaintiff claims that while in the custody of the Bureau of Prisons, various medical providers prescribed him and administered to him an antipsychotic medication, risperidone and olanzapine, which caused him to develop gynecomastia.   ECF No. 1 at 14.   Plaintiff claims that no prison officials have provided him his requested treatment, that being breast reduction surgery.   Id.   Plaintiff asserts that his physicians have "cause[d] his breast[s] to grow and then refused to remove them for their own sick personal gratification."   Id.   Plaintiff claims that this refusal to provide him with breast

reduction surgery constitutes cruel and unusual punishment, in violation of the Eighth Amendment.

### A. Plaintiff Failed to Prosecute His Claims against McLean, Santos, Borecky, Aboulfatch and Gonzales.

Plaintiff has the responsibility to serve process upon named defendants.  Rule 4(m) of the Federal Rules of Civil Procedure provides in part that, "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant. . ."

"The court has inherent power to dismiss, on its own motion, for want of prosecution."  American Nat. Bank & Trust Co. of Chicago v. U.S.,142 F.2d 571 (D.C. Cir. 1944).  A federal trial court has the authority "to dismiss a plaintiff's action with prejudice because of his failure to prosecute."  Doyle v. Murray, 938 F.2d 33 (4th Cir. 1991) (quoting Link v. Wabash R.R., 370 U.S. 626, 629 (1962)).

The complaint was filed November 28, 2016.  ECF No. 1.  Claim 1 alleges that all defendants violated Plaintiff's rights without specificity as to action or date of the alleged violation.  Id. at 12.  Claim 2 alleges McLean violated Plaintiff's rights in 2010.  Id. at 13.  Claim 3 alleges Borecky violated Plaintiff's rights on May 4, 2015. Id.  Claim 8 alleges Santos violated Plaintiff's rights on July 20, 2015.  Id. at 15. Claim 16 alleges Aboulfatch violated Plaintiff's rights on an unspecified date.  Id. at 16.  Claim 19 alleges Gonzalez violated Plaintiff's rights on an unspecified date.  Id. at 17.

Summonses were issued for all defendants on July 12, 2017.  ECF No. 15. On July 19, 2017, the returns for McLean, Santos, Borecky, Aboulfatch and Gonzalez were returned unexecuted.  ECF Nos. 20, 21, 22, 23, 24, 25.  Since July 19, 2017, service has not been perfected on any of those five defendants.  Plaintiff has failed to prosecute this action as to these five defendants.  Accordingly, this Court recommends that Claims 1, 2, 3, 8, 16 and 19 be dismissed without prejudice as to McLean, Santos, Borecky, Aboulfatch and Gonzalez.

**B.    Plaintiff Fails to State a Claim upon Which Relief May Be Granted in Claims 1, 9 and 14 for Failure to Make a Claim Against any Named Defendants.**

Plaintiff has failed to comply with the Federal Rules of Civil Procedure requirement that "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. at 555.  Plaintiff's claims 1, 9 and 14 fail to specify any of the 21 named defendant as actors who either performed or failed to perform some act which led to a violation of his rights.  Claim 1 is a broad claim of violation of Plaintiff's rights but fails to include any factual allegations against any named defendants, instead appearing to be more of legal argument in the guise of a claim:

> Each of the defendants have acted in a concerted manner to willfully deprive the plaintiff of rights and privileges while acting under color of federal laws in violation of the Eight[h] and Fourteenth Amendment[s] of the U.S. Constitution and their agency regulation as prescribed by Federal Bureau of Prisons program statement further each defendant maliciously and willfully showed deliberate indifference toward subjecting me to cruel and unusual punishment.

ECF No. 1 at 12.

15

Although Plaintiff's Claims 9 and 14 are both short and plain, however, those two claims fail to provide any factual allegations against any named defendant.  Claim 9 alleges that Plaintiff was taken to Preston Memorial Hospital for an ultrasound and mammography, where he was found to have "dense retroareolar fibroglandular tissue".  No defendant is named or described in Claim 9, although the name of a physician who is not a defendant is listed.  Id. at 15.  Claim 14 appears to allege that a medical examination[6] revealed his gynecomastia to be moderate to advanced.  Id. at 16.  No defendant is named or described in Claim 14.  Claims 1, 9 and 14 do not give defendants notice as to what the claims are and the acts upon which those claims are based.  Accordingly, because Plaintiff has failed to state a claim upon which relief can be granted as to Claims 1, 9 and 14, this Court recommends that these claims be dismissed without prejudice.

### C. Plaintiff Fails to State a Claim Upon Which Relief May Be Granted as to Razavi, Beaudoin, Joaquin, Holtzapple, O'Brien, Duvall, Friend, or Pyles.

Plaintiff fails to state a claim upon which relief may be granted against defendants Razavi[7], Beaudoin, Joaquin, Holtzapple, O'Brien, Duvall, Friend or Pyles.  These eight claims allege violations of Plaintiff's rights on unspecified dates:  Claim 15 is against Beaudouin; Claim 17 is against Joaquin; Claim 20 is against Holtzapple; Claim 21 is against O'Brien; Claim 23 is against Friend; Claim 24 is against Duvall; Claim 25 is against Razavi; and Claim 27 is against Pyles.  All eight claims assert that

---

[6]  Claim 14 alleges: "Plaintiff ult [sic] breast bilateral on July 28, 2014, reveals moderate to advanced gynecomastia."

[7]  In her Motion to Dismiss [ECF No. 52] and accompanying Memorandum of Law [ECF No. 53], Razavi argues that the claims against her should be dismissed because she was not a government employee subject to a Bivens claim.  However, when subject-matter jurisdiction does not exist, "the only function remaining to the court is that of announcing the fact and dismissing the cause."  Reinbold v. Evers, 187 F.3d 348, 359 n.10 (4th Cir. 1999) quoting Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 118 S.Ct. 1003, 1012–16, 140 L.Ed.2d 210 (1998), (internal quotation marks omitted).

Plaintiff "voice[d]" his concerns about his medical condition and treatment to the defendants.   None of the eight claims indicate what actions, if any, defendants took which allegedly constituted a violation of Plaintiff's rights.

In these eight claims Plaintiff has failed to comply with the Federal Rules of Civil Procedure requirement recognized by <u>Twombly</u>, <u>supra</u>, that requires the complaint to contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"   Defendants Razavi, Beaudoin, Joaquin, Holtzapple, O'Brien[8], Duvall, Friend or Pyles have not been given any notice of what the claim is and the grounds upon which those claims rest.   Plaintiff merely alleges he "voiced" his concerns to these individuals.   He does not assert any action or inaction by the named defendants as a result of him voicing his concerns.     Even construing Plaintiff's pleadings liberally, a court is not required to construct Plaintiff's arguments for him.   <u>Small v. Endicott</u>, <u>supra</u>.  Plaintiff has not made an argument as to how Razavi, Beaudoin, Joaquin, Holtzapple, O'Brien, Duvall, Friend or Pyles violated his rights, he has simply listed each as an individual to whom he shared his concerns.   Accordingly, because Plaintiff has failed to state a claim upon which relief can be granted as to Claims 15, 17, 20, 21, 23, 24, 25 and 27, this Court recommends that these claims be dismissed without prejudice.

---

[8]   Defendants argue that Plaintiff's claims against O'Brien should be dismissed because he properly relied upon his subordinates, trained medical professionals, to provide treatment to Plaintiff, and did not interfere with that treatment, consistent with the holdings in <u>Miltier v. Beorn</u>, 896 F.3d 848, 854-55 (4th Cir. 1990), overruled in part on other grounds by <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). However, when subject-matter jurisdiction does not exist, "the only function remaining to the court is that of announcing the fact and dismissing the cause."   <u>Reinbold v. Evers</u>, <u>supra</u>.

**D.      Plaintiff Fails to State a Claim Upon Which Relief May Be Granted as to Armel, Bird and Wood.**

Plaintiff fails to state a claim upon which relief may be granted against the Armel, Bird and Wood, each of whom are alleged only to have reviewed or annotated his medical history.

Claim 10 alleges that Armel violated Plaintiff's rights on December 3, 2015 when she "noted [ ] [and] reviewed endoc[rinology] consult which suggest that gynecomastia due to idiopathic drug induced by with Zyprexa or Remeron, and stated plaintiff did not wish to take any mental health medications due to breast issues."   Plaintiff has not made an argument as to how Armel violated his rights, he has simply listed her as an individual to whom he shared his concerns, and who reviewed and made a notation on his medical history.

Claim 28 alleges that Bird violated Plaintiff's rights on an unspecified date when she "noted that plaintiff has a history of breast gynecomastia caused from an antipsychotic medication risperidone."   ECF No. 1 at 18.   Plaintiff has not made an argument as to how Bird violated his rights, he has simply listed her as an individual who reviewed and made a notation on his medical history.

Claims 4 and 13 allege that Wood violated Plaintiff's rights "[i]n 2015" and more specifically, on June 15, 2015.   Claim 4 alleges, "In 2015, plaintiff was seen by endo[crinology] specialist who recommending stopping all antipsychotic medication and sugge[s]ted possibility of breast reduction surgery, noted by PA-C B.Wood."   ECF No. 1 at 13.   Claim 13 alleges that, "plaintiff updated us[9] of breast, completed in 2014.   Noted benign tissue.   Noted by PA-C B. Wood."   Plaintiff has not made an argument as to how

---

[9]     It is unclear if the term "us" here is intended to signify that word or if it intended as an abbreviation for "United States" or "ultrasound" or any other term.

Wood violated his rights, he has simply listed Wood as an individual who reviewed and made notations on his medical history.

Again construing Plaintiff's pleadings liberally, this court is not required to construct Plaintiff's arguments for him.  Small v. Endicott, supra.  Plaintiff has not made an argument as to how Armel, Bird or Wood violated his rights, he has simply listed each as an individual who reviewed or made notes upon his medical history. Accordingly, because Plaintiff has failed to state a claim upon which relief can be granted as to Claims 4, 10, 13 and 28, this Court recommends that these claims be dismissed without prejudice.

### E. Plaintiff Cannot State a Claim Upon Which Relief May be Granted as to Craig, Bennett-Meehan, Meyer and Gerson, because those Defendants are entitled to Absolute Immunity

As recognized by the Supreme Court in Hui v. Castaneda, 559 U.S. 799 (2010), United States Public Health Service (PHS) personnel are entitled to absolute immunity for alleged constitutional violations arising out of their official duties.  "Based on the plain language of § 233(a), we conclude that PHS officers and employees are not personally subject to *Bivens* actions for harms arising out of such conduct."  599 U.S. at 802.  The Court explained:

> "To be sure, that immunity is contingent upon the alleged misconduct having occurred in the course of the PHS defendant's duties, but a defendant may make that proof pursuant to the ordinary rules of evidence and procedure. As petitioners observe, proof of scope is in most § 233(a) cases established by a declaration affirming that the defendant was a PHS official during the relevant time period."

559 U.S. at 811.  Plaintiff claims that all defendants were "acting within [the] scope of [their] official duties" when they allegedly violated his rights.  ECF No. 1 at 2 – 9.

Defendants have not disputed this contention.  Further, four of the federal Defendants herein filed on their behalf such a declaration as recognized in <u>Hui</u>.  The declaration of Franceen Fletcher, Regional Human Resources Specialist for the Mid Atlantic Regional Office of the Bureau of Prisons, states that defendants Craig, Gerson, Bennett-Meehan, and Meyer were all employed by the Public Health Service and assigned to the Bureau of Prisons at the time when Plaintiff alleges they violated his constitutional rights.  ECF No. 56-6- at 2.  Craig, Meehan, and Meyer received their commissions with PHS prior to 2014.  <u>Id.</u> at n. 1.  Gerson received his commission on July 11, 2014.  <u>Id.</u>

Claim 7 alleges Bennett-Meehan violated Plaintiff's rights on July 22, 2015. Claim 11 alleges Bennett-Meehan violated Plaintiff's rights on July 20, 2015.  Bennett-Meehan received her commission prior to 2014, and is thus entitled to absolute immunity as a PHS employee for any alleged constitutional violations arising out of her official duties thereafter, including the allegations of Claims 7 and 11.

Claim 18 alleges Gerson violated Plaintiff's rights on an unnamed date.  Process was served upon Gerson at MDC Brooklyn [ECF No. 44], a facility where Plaintiff was housed from December 6, 2010 through May 28, 2014, and from December 16, 2014 through May 20, 2015.  ECF No. 56-4 at 2, 1.  Gerson received his commission on July 11, 2014, and is thus entitled to absolute immunity as a PHS employee for any alleged constitutional violations arising out of his official duties thereafter, including the allegations of Claim 18.

Claim 22 alleges Craig violated Plaintiff's rights on an unnamed date.  Process was served upon Craig at USP Allenwood [ECF No. 67], a facility where Plaintiff was housed at various times from June 2, 2014 through November 23, 2015.  ECF No. 56-4

at 1. Craig received his commission prior to 2014, and is thus entitled to absolute immunity as a PHS employee for any alleged constitutional violations arising out of his official duties thereafter, including the allegations of Claim 22.

Claim 26 alleges Meyer violated Plaintiff's rights on an unnamed date. Process was served upon Meyer at USP Hazelton [ECF No. 37], a facility where Plaintiff was housed from November 23, 2015 through September 26, 2016. ECF No. 56-4 at 1. Meyer received his commission prior to 2014, and is thus entitled to absolute immunity as a PHS employee for any alleged constitutional violations arising out of his official duties thereafter, including the allegations of Claim 26.

Based on the plain language of § 233(a), this Court finds that Bennett-Meehan, Gerson, Craig and Meyer were all personnel of PHS, who were acting in the scope of their official duties, and thus are entitled to absolute immunity against Plaintiff's allegations in Claims 7, 11, 18, 22 and 26. Because there is no set of facts in support of Plaintiff's claims which would entitle him to relief in the face of such absolute immunity, Plaintiff fails to state a claim upon which relief may be granted against these four defendants in Claims 7, 11, 18, 22 and 26. Accordingly, this Court recommends those claims against Bennett-Meehan, Gerson, Craig and Meyer be dismissed with prejudice.

### F. Plaintiff Fails to State a Claim Upon Which Relief May Be Granted as to Buschman Because Plaintiff fails to Demonstrate He Had A Serious Medical Need

The only other claims this Court reviews on substantive grounds are the four claims against Buschman. Claims 5, 6 and 12 allege that Buschman violated Plaintiff's rights on July 17, 2015. Claim 5 alleges that Buschman spoke to Plaintiff, consulted Plaintiff's "psychosis history and [ ] past history of psycho [sic] medication and

suggested that a different antipsychotic be given to plaintiff because the risperidone he was about to pr[es]cribe to the plaintiff again could increase his current gynecomastia." ECF No. 1 at 14.   Claim 6 alleges that Buschman "attempted to pr[e]scribe plaintiff the same antipsychotic medication Risperidone, after endoc[rinology] specialist recommended stopping all antipsychotic medication." Id. at 15.  Claim 12 alleges that Buschman "discontinued the anti-psychotic medication after plaintiff informed him he did not want to take the same medication that gave him breas[ts]." Id. at 16.  Claim 29 alleges that Buschman violated Plaintiff's rights on "12-09-1014" when he "noted . . . that the endocrinolog[ist] advis[ed] drug induced 'olanzapine and Remeron' v. idiopathic." Id. at 18.  Liberally construing these claims, along with Plaintiff's assertion that his physicians have prescribed medication which caused him to develop gynecomastia, then refused to provide Plaintiff with the requested breast reduction surgery to treat that condition, as part of "their own sick personal gratification", this Court finds that the Plaintiff has failed to state a claim upon which relief may be granted.

Plaintiff's gynecomastia does not meet the standard to be recognized as a serious medical condition, which is necessary to prove a violation of the Eighth Amendment and obtain relief pursuant to a Bivens complaint.

In Ziglar v. Abbasi, __ U.S. __, 137 S. Ct. 1843, 1854 (2017), the Supreme Court discussed the history of 42 U.S.C. § 1983, the initial version of which was passed by Congress in 1871, and the 1971 decision in Bivens which recognized the analogous cause of action against federal officials who violate the Constitutional rights of plaintiffs. "The Court held [in Bivens] that, even absent statutory authorization, it would enforce a damages remedy to compensate persons injured by federal officers who violated the

prohibition against unreasonable search and seizures."   Id., citing Bivens, supra, 403

U.S. at 397.   Pursuant to Bivens, a federal agent may be found liable for actions "in

excess of the authority delegated to him."   403 U.S. at 397.   "The purpose of Bivens is

to  deter  individual federal officers  from  committing  constitutional  violations."   Corr.

Servs. Corp. v. Malesko, 534 U.S. 61, 70 (2001).  The Supreme Court further explained

in Malesko:

> If a federal prisoner in a BOP facility alleges a constitutional
> deprivation, he  may  bring  a Bivens claim  against  the
> offending  individual officer,  subject  to  the  defense  of
> qualified    immunity.    The    prisoner    may    not    bring
> a Bivens claim  against  the  officer's employer,  the  United
> States, or the BOP. With respect to the alleged constitutional
> deprivation,  his  only  remedy  lies  against  the  individual.

534 U.S. at 72.

"Prisoners alleging that they have been subjected to unconstitutional conditions

of confinement must satisfy the Supreme Court's two-pronged test set forth in Farmer v.

Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)."   Scinto v. Stansberry,

841 F.3d 219, 225 (4th Cir. 2016), cert. denied sub nom. Phillip v. Scinto, 138 S. Ct.

447, 199 L. Ed. 2d 340 (2017).   "In order to establish that she has been subjected to

cruel and unusual punishment, a prisoner must prove (1) that "the deprivation of [a]

basic human need was objectively 'sufficiently serious,' " and (2) that "subjectively 'the

officials act[ed] with a sufficiently culpable state of mind.' "   De'Lonta v. Angelone, 330

F.3d at 634 (quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)).   As

explained in Scinto, the "objective" prong of Farmer requires plaintiffs to demonstrate

that "the deprivation alleged [was], objectively, 'sufficiently serious.' "   Id. Scinto further

held that to be "sufficiently serious," the deprivation must be "extreme" by posing "a

serious or significant physical or emotional injury resulting from the challenged conditions," or "a substantial risk of such serious harm resulting from ... exposure to the challenged conditions."   Id. quoting De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotation marks and citation omitted).

In order to state a cognizable civil rights claim related to medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment."   Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292, 50 L. Ed. 2d 251 (1976).   In medical needs cases, the Farmer test requires Plaintiff to demonstrate officials' deliberate indifference to a serious medical need that has either "been diagnosed by a physician as mandating treatment or ... is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Scinto, supra, quoting Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008).   See Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir.1990), cert. denied, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir.1987) cert. denied, 486 U.S. 1006 (1988).

The Fourth Circuit previously explained in Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995), that, " '[b]ecause society does not expect that prisoners will have unqualified access to health care,' the objective component of an Eighth Amendment claim based on a deprivation of medical attention is satisfied only if the medical need of the prisoner is 'serious.' "   Citing Hudson v. McMillian, 503 U.S. 1, at 9 (quoting Estelle, 429 U.S. at 104)."   71 F.3d at 166.   "[P]risoners do not have a constitutional right 'to the treatment of his or her choice,' . . . and '[m]ere disagreement

as to the proper medical treatment' does not constitute deliberate indifference." <u>King v.</u> <u>United States</u>, 536 Fed. Appx. 358, 363 (4th Cir. 2013) (quoting <u>Spruill v. Gillis</u>, 372 F.3d 218, 235 (3d Cir. 2004). "An inmate's mere disagreement with the course of treatment provided by medical officers will not support a valid Eighth Amendment claim." <u>Jackson</u> <u>v. Sampson</u>, 536 Fed. Appx. 356 (4th Cir. 2013), <u>citing</u> <u>Russell v. Shaffer</u>, 528 F.2d 318, 319 (4th Cir. 1975).

Application of the <u>Farmer</u> test to Plaintiff's medical condition does not demonstrate that he is entitled to any relief, because he does not meet the first prong of the test. Plaintiff has not been deprived of a basic need that was objectively sufficiently serious because his benign fibroglandular breast tissue is not an objectively sufficiently serious condition. A serious medical need is one that has either been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Serious medical conditions are those recognized to affect an essential life function. <u>Brice v. Virginia Beach Correctional</u> <u>Center</u>, 58 F. 3d 101 (4th Cir. 1995) (A broken jaw was recognized by the parties as a serious medical condition); <u>Webb v. Prison Health Services,</u> 1997 WL 298403 (D. Kansas May 7, 1997) (Carpal tunnel syndrome and a rotator cuff injury were not serious medical conditions); <u>Veloz v. New York</u>, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999) (A foot condition involving a fracture fragment, bone cyst and degenerative arthritis which plaintiff claimed caused problems walking, pain and cramping, was not sufficiently serious). Plaintiff received a diagnosis of gynecomastia with fibroglandular changes, however, his condition was not determined to mandate treatment. Rather, it was recommended that Plaintiff employ over the counter pain relief for his condition.

Plaintiff's condition may concern him, however, it is not serious as contemplated by <u>Farmer</u>.  According to the Mayo Clinic, "[g]enerally, gynecomastia isn't a serious problem."    https://www.mayoclinic.org/diseases-conditions/gynecomastia/symptoms-causes/syc-20351793.  Moreover, the attachments to his complaint confirm that Plaintiff received repeated medical treatment for his gynecomastia.  ECF Nos. 1-1, 1-3, 1-6.  One of those attachments includes a description of the condition and recommended treatment:

> You have a right breast with fibrocystic changes due to medication that you had previously taken.  It is a known side effect of the medication you were taking.  You will need to buy Tylenol or ibuprofen from commissary for pain relief.  If you have purchased Tylenol or ibuprofen and it is not working you will need to return to sick call and discuss that you are still having pain.

ECF No. 1-3.  The Mayo Clinic advises that, "[b]reast changes categorized as fibrocystic are considered normal."    https://www.mayoclinic.org/diseases-conditions/fibrocystic-breasts/symptoms-causes/syc-20350438.  In a "Central Office Administrative Remedy Appeal" dated April 3, 2016, Plaintiff claims that "Ibuprofen [ ]or Tylenol is not helping the pain in any regards."  ECF No. 1-6 at 3.  However, another of Plaintiff's attachments, an Administrative Remedy Response dated May 11, 2016, and addressed to Plaintiff, states that Plaintiff refused treatment on May 5, 2016, and "a review of your commissary purchases reveals you have not purchased Ibuprofen since February 29, 2016, and there is no evidence to suggest you have been refused proper medical treatment for pain in your right breast."  ECF No. 1-6 at 2.

Moreover, Plaintiff's allegations against Buschman do not subjectively demonstrate that Buschman acted with a sufficiently culpable state of mind of deliberate

indifference to Plaintiff's medical needs.  Claims 5, 6 and 12 are all alleged to have occurred on the same date, July 17, 2015.  In Claim 5 Plaintiff alleges that Buschman reviewed his medical history then recommended a different treatment so that plaintiff's gynecomastia would not be exacerbated.  ECF No. 1 at 14.  In Claim 6 Plaintiff alleges that Buschman "attempted" to prescribe Risperidone, the same medication which Plaintiff claims caused his gynecomastia.  Plaintiff does not claim that Buschman actually prescribed the medication, and Plaintiff acknowledges that he was already experiencing gynecomastia before being treated by Buschman.  Id. at 15.  In Claim 12 Plaintiff alleges that Buschman "discontinued" the antipsychotic medication after Plaintiff advised that he did not want to take it.  Id. at 16.  In sum, Plaintiff appears to allege that in a single treatment visit Buschman reviewed Plaintiff's medical history, attempted to prescribe a medication to which Plaintiff advised he had experienced an adverse reaction, after which Buschman suggested an alternative treatment.  Claim 29 merely alleges that Buschman noted Plaintiff's medical history and the determination of a prior medical provider.

Although it is clear that Plaintiff was dissatisfied with the medical treatment he was provided, as noted by the Fourth Circuit in King v. United States, supra, and Jackson v. Sampson, supra, Plaintiff does not have a constitutional right to the treatment of his choice.  Plaintiff's "disagreement as to the proper medical treatment does not constitute deliberate indifference".  King, 536 Fed. Appx. at 363.  Accordingly, Plaintiff's claims that the denial of breast reduction surgery constituted deliberate indifference to a serious medical condition are without merit.

Even a liberal reading of the complaint does not support Plaintiff's claims.  It appears beyond doubt that Plaintiff can prove no set of facts in support of his claims which would entitle him to relief.  Accordingly, for all these reasons, the undersigned recommends that Plaintiff fails to state a claim upon which relief can be granted against and that all claims asserted by Plaintiff against Buschman in Counts 5, 6, 12 and 29 be dismissed with prejudice.

### V. Recommendation

For the foregoing reasons, the Court recommends that Razavi's Motion to Dismiss **[ECF No. 52] be GRANTED.**  The Court further recommends that the Motion to Dismiss or in the Alternative Motion for Summary Judgment **[ECF No. 56] be GRANTED.**

The Court recommends that Plaintiff's complaint be **DISMISSED WITH PREJUDICE as to Claims: 5 (Buschman), 6 (Buschman), 7 (Bennett-Meehan), 11 (Bennett-Meehan), 12 (Buschman), 18 (Gerson), 22 (Craig), 26 (Meyer), and 29 (Buschman)**; and that this matter be **DISMISSED WITHOUT PREJUDICE as to Claims: 1 (all defendants), 2 (McLean), 3 (Borecky), 4 (Wood), 8 (Santos), 9 (no named defendant), 10 (Armel), 13 (Wood), 14 (no named defendant), 15 (Beaudouin), 16 (Aboulfatch), 17 (Joaquin), 19 (Gonzalez), 20 (Holtzapple), 21 (O'Brien), 23 (Friend), 24 (Duvall), 25 (Razavi), 27 (Pyles) and 28 (Bird).**

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.  A copy of such objections should also be submitted to

the Honorable Gina M. Groh, Chief United States District Judge.  Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.  28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985); Wells v. Shriners Hosp., 109 F.3d 198 (4th Cir 1997).

This Report and Recommendation completes the referral from the District Court. The Clerk is directed to terminate the Magistrate Judge association with this case.

The Clerk of the Court is directed to send a copy of this Order to the Petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet and to counsel of record via electronic means.

DATED:        February 22, 2018

/S/ Michael John Aloi
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE